1 **REESE LLP**
Michael R. Reese (State Bar No. 206773)
2 100 West 93rd Street, 16th Floor
New York, New York 10025
3 Telephone: (212) 643-0500
Facsimile: (212 253-4272
4 *mreese@reesellp.com*

5 **REESE LLP**
George V. Granade (State Bar No. 316050)
6 8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
7 Telephone: (310) 393-0700
Facsimile: (212) 253-4272
8 *ggranade@reesellp.com*

9 **SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (to be admitted *pro hac vice*)
10 505 Northern Boulevard, Suite 311
Great Neck, New York 11021-5101
11 Telephone: (516) 303-0552
Facsimile: (516) 234-7800
12 *spencer@spencersheehan.com*

13 *Counsel for Plaintiff Robbin Sommer
and the Proposed Class*

14

15                    UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
16

17 | ROBBIN SOMMER, *individually and on behalf of all others similarly situated*, | Case No. 20-cv-4181 |
|---|---|
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| - against – | **Demand for Jury Trial** |
| KEURIG DR PEPPER INC., | |
| Defendant. | |

Plaintiff Robbin Sommer, on behalf of herself and others similarly situated (collectively, "Plaintiffs"), brings this Class Action Complaint against Keurig Dr Pepper Inc. ("Defendant" or "Keurig Dr Pepper") and on the basis of personal knowledge, information and belief, and investigation of counsel, alleges as follows:

**INTRODUCTION**

1. Defendant manufactures, distributes, markets, labels, and sells iced tea beverages purporting to be low in sugar under their "Straight Up Tea" brand (collectively, the "Products").

2. During the Class Period (as defined below), Plaintiffs purchased the Products in California.

3. Keurig Dr Pepper falsely and misleadingly markets the Products to consumers as being "Sorta Sweet" and low in sugar as those terms are generally understood.

4. In fact, the Products are high in sugar to an extent that belies the sugar content representations made on the Products' front labels.

5. Keurig Dr Pepper charges a premium for the Products on account of its false and misleading representations regarding low sugar content, including "Sorta Sweet."

6. Plaintiffs would not have purchased or paid more for the Products had Plaintiffs realized that the Products were high in sugar.

**JURISDICTION**

7. This Court has jurisdiction over this action under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the parties are citizens of different states.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and misrepresentations giving rise to Plaintiffs' claims occurred in this District, and Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of its products here, (2) resides in this District, and (3) is subject to personal jurisdiction in this District.

9. **Intradistrict assignment**. Assignment to the San Francisco Division or the Oakland Division is appropriate under Civil Local Rule 3-2(c) and (d) because a substantial part of the events and misrepresentations giving rise to Plaintiffs' claims occurred in San Mateo County, including Plaintiff Robbin Sommer's purchase of the Products in reliance on Defendant's false and misleading "Sorta Sweet" representation.

**PARTIES**

10. Plaintiff Robbin Sommer is a resident of Burlingame and San Mateo County, California.

11. Ms. Sommer purchased the Products for personal, family, or household use at Safeway in Burlingame, California, in June 2019. The front of the Products that Ms. Sommer purchased said "Sorta Sweet."

12. Ms. Sommer read and relied upon the "Sorta Sweet" representation when she purchased the Products. She believed that the Products were, in fact, low in sugar. Ms. Sommer would not have purchased the Products had she understood that the Products were truly high in sugar.

13. Ms. Sommer would purchase the Products again in the future if the Products were remedied to reflect Defendant's labeling and marketing claims for them.

14. Defendant Keurig Dr Pepper Inc. is a Delaware corporation with its principal place of business in Plano, Texas, Fulton County.

**BACKGROUND**

15. In 2014, the National Institutes of Health cautioned: "experts agree that Americans eat and drink way too much sugar, and it's contributing to the obesity epidemic. Much of the sugar we eat isn't found naturally in food but is added during processing or preparation."[1]

16. The NIH noted further: "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide."[2]

---

[1] NIH, *Sweet Stuff: How Sugars and Sweeteners Affect Your Health* (Oct. 2014).
[2] *Id.*

3

17. There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of certain cancers' relationship to obesity."[3]

18. In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]."[4]

19. At least in part due to growing consumer awareness of health problems caused by excessive sugar consumption, in recent years consumers have shown a distinct preference for products with little or no added sugar.

20. In August 2016, an article in "Prepared Foods" magazine noted that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years."[5]

21. As another observer of the food industry explained in May 2017: "[h]ealth concerns and better educated consumers are propelling the demand for sugar reduction across food and beverage categories. . . . Sugar reduction will be one of the top marketing claims prominently featured on products in the coming year . . . ."[6]

22. Similarly, an article in the February 28, 2018, edition of "Food Business News" reported that "[s]peakers addressing consumer trends at the International Sweetener Colloquium in Orlando on February 13 said sugar avoidance was a macro trend 'that is here to stay and will only increase.'"[7]

**23.** The same article noted that "I.R.I. [Information Resources, Inc.] surveys show that 58% of consumers across generations are avoiding sugar . . . [and of] those avoiding sugar, 85% are doing so for health reasons and 58% for weight concerns."[8]

---

[3] Marlene Cimons, *Eating too much sugar can hurt your health, and for some it's actually addictive*, WASHINGTON POST, Dec. 16, 2017.
[4] Kieron Rooney, *Yes, too much sugar is bad for our health – here's what the science says*, THE CONVERSATION, March 8, 2018.
[5] *Trends in Sugar Reduction and Natural Sweeteners*, PREPAREDFOODS.COM (Aug. 24, 2016).
[6] Laura Dembitzer, *Less is More: Sugar Reduction, Less Sodium & Low-FODMAPS in Food, Beverage*, FOOD INSIDER J., May 9, 2017.
[7] Ron Sterk, *Avoidance of sugar remains macro trend*, FOOD BUS. NEWS, Feb. 28, 2018.
[8] *Id.*

4

**SPECIFIC MISREPRESENTATIONS,**
**MATERIAL OMISSIONS, AND DECEPTIVE ACTS**

**Defendant's Implied Nutrient Content Claim Is Prohibited and Misleading**

24. Below is an image of the label of one of the Products:



25. The representation "Sorta Sweet" on the Products' labels is understood by consumers to indicate the Products are low in sugar.

5

26. Representations that characterize the levels of nutrients are restricted because they can be used to mislead consumers. 21 U.S.C. § 343(r)(2)(A); 21 C.F.R. § 101.13 ("general principles" of nutrient content claims); 21 C.F.R. §§ 101.54-101.69 ("Subpart D—Specific Requirements for Nutrient Content Claims").

27. Nutrient content claims were originally authorized for total fat, saturated fat, cholesterol, sodium, and total sugars.[9]

28. For fat, saturated fat, cholesterol, sodium, and calories, "low ____" claims were permitted subject to upper limits for how much of the specific nutrient was contained in a serving of that food.

29. This prevented serving sizes from being manipulated so a food could be labeled as having a low amount of a specific nutrient, when it otherwise would not qualify for such a claim.[10]

30. Low sugar products are generally marketed towards consumers seeking products that are useful in "weight control" through consumption of fewer calories.

31. As maintaining a healthy body weight became more scientifically supported and accepted as a public health and individual goal, it was no longer accurate for representations related to maintaining a healthy body weight to be described in connection with "special dietary uses." Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms, 56 Fed. Reg. 60,421, 60,457 (Nov. 27, 1991) ("Consequently, the agency is proposing to place requirements for terms such as 'low' and 'reduced calorie,' comparative claims, and sugar claims, originally provided for in § 105.66, in § 101.60").

32. In fact, the regulation for dietary foods, 21 C.F.R. § 105.66, originally included "terms such as low calorie, 'reduced calorie,' and 'sugar free,' which were thought to be useful attributes of a food in the maintenance or reduction of body weight." *Id.*; U.S. FOOD & DRUG ADMIN., *Guidance for Industry and FDA: Dear Manufacturer Letter Regarding Sugar Free*

---

[9] Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food, 58 Fed. Reg. 2302, 2305 (Jan. 6, 1993) (to be codified at 21 C.F.R. pts. 5 & 101) [hereinafter 58 Fed. Reg. 2302].

[10] *See* 21 C.F.R. § 101.62; 21 C.F.R. § 101.61; 9 C.F.R. § 381.460.

6

*Claims* (Sept. 2007) ("FDA has historically taken the position that consumers may associate claims regarding the absence of sugar with weight control and with foods that are low calorie or that have been altered to reduce calories significantly.").

33. Reasonable consumers "clearly link sugar to calories and therefore expect a reduction in sugar content to deliver a reduction in calorie content." N. J. Patterson et al., *Consumer understanding of sugars claims on food and drink products*, NUTRITION BULLETIN 37.2 (2012): 121-130 ("In focus groups, participants felt deceived if sugar reduction claims were being made without a significant reduction in calories."); *see* 21 C.F.R. § 101.60(c)(1) ("Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., 'sugar free,' or 'no sugar,' as indicating a product which is low in calories or significantly reduced in calories.").

34. The table below summarizes the types of claims authorized for calories and sugar.

|  | Calorie Claims[11] | Sugar Claims[12] |
| --- | --- | --- |
| Absence | No Calories | No Sugar |
| Relative | Fewer Calories | Less Sugar |
| Low | Low Calories | X |
| No Added | n/a | No Sugar Added |

35. "Absolute" claims such as "sugar free" or "no sugar" are permitted if a food contained less than 0.5 grams of sugars. 21 C.F.R. § 101.60(c)(1).

36. "Relative" claims such as "reduced sugar" and "lower sugar" are permitted if a food has at least 25 percent less sugar per reference amount customarily consumed ("RACC") than an appropriate reference food. 21 C.F.R. § 101.60(c)(5); *see also* 21 C.F.R. § 101.13(j).

37. A "relative" sugar claim is required to disclose the reference food and the percent by which the amount of sugar differs between the two foods in immediate proximity to the claim (e.g., "these corn flakes contain 25 percent less sugar than our sugar coated corn flakes"). 21 C.F.R. § 101.60(c)(5)(ii)(A).

38. Because "low sugar" and "low added sugar" claims have never been authorized,

---

[11] 21 C.F.R. § 101.60(b).
[12] 21 C.F.R. § 101.60(c).

7

1  they are prohibited. 58 Fed. Reg. at 2368 ("The agency stated that under the provisions of the

2  statute, such implied claims are prohibited until they are defined by FDA by regulation.").[13]

3      39.    The FDA has issued warning letters to companies making "low sugar" claims nad

4  has stated, for example:

5      The labeling for your "Fruit of the Spirit" product, located on the website [url
    omitted] contains the nutrient content claim "Low sugar." While FDA has defined
6      some nutrient content claims for sugar in 21 CFR 101.60(c), FDA has not defined
    "Low sugar"; therefore, the use of this claim misbrands your product under
7      section 403(r)(1)(A) of the Act. The claim "lower sugar" may be used . . . .")

8  FDA Warning Letter to CK Management, Inc., May 19, 2015.

9                **Defendant's "Sorta Sweet" Representation Is Misleading**

10      40.    "Sorta," slang for "sort of," is understood as "slightly," which is defined as "small

11  . . . in amount."[14]

12      41.    "Sorta" is therefore a synonym of "low," which is why "Sorta Sweet" gives

13  consumers the impression it describes a product that is low in sugar.

14      42.    Far from being "Sorta Sweet" and low in sugar, sugar is the second most

15  predominant ingredient in the Products by weight, greater even than the amount of tea, as the

16  Product ingredients list below shows:

> OUR REAL TEA STARTS WITH THE FINEST TEA LEAVES AND IS MADE FROM: **FILTERED WATER, SUGAR, TEA, NATURAL FLAVORS, CITRIC ACID.**
>
> **INGREDIENTS:** FILTERED WATER, SUGAR, TEA, NATURAL FLAVORS, CITRIC ACID.

23      43.    Consumers will not expect a product represented as "Sorta Sweet" to have 22

24  grams of added sugar, as indicated is present in the Product on the Product Nutrition Facts panel

25  reproduced below:

---

[13] U.S. FOOD & DRUG ADMIN., *Food Labeling Guide* (Jan. 2013).
[14] ONLINE SLANG DICTIONARY, *Sorta* (Dec. 26, 2010); MACMILLAN DICTIONARY, *Sort Of* (2020); MERRIAM-WEBSTER DICTIONARY, *Slight* (2020).

8

| NUTRIENTS | AMOUNT | % DAILY VALUE |
|---|---|---|
| Calories | 90 | + |
| Total Fat | 0g | 0% |
| Sodium | 5mg | 0% |
| Total Carbohydrates | 22g | 8% |
| Total Sugars | 22g | + |
| Includes 21g Added Sugars | | 43% |
| Protein | 0g | |

44. Though the Nutrition Facts tells consumers the 18.5 ounces of the Product provides 43 percent of the Daily Value for added sugar, based on the FDA-recommended daily value of 50 grams of added sugars, they are not told whether this amount is low, medium, or high.[15]

45. Since nutrient content claims are based on the reference amount customarily consumed, the RACC for the 18.5-ounce Sorta Sweet Product is 360 milliliters (12 ounces).

46. At 22 grams of added sugar per 18.5 ounces, the equivalent amount for 360 milliliters is approximately 14 grams.

47. Dividing 14 grams by 50 grams (the Daily Value for added sugars) means the Sorta Sweet Tea contains 28 percent per RACC of the Daily Value for added sugar.

48. While regulations do not define "low sugar" or "low added sugar," such a figure can be hypothesized based on the upper thresholds for "low" claims for fat, saturated fat, cholesterol.

49. Claims that a food is "high" in levels of a nutrient are authorized where the food

---

[15] U.S FOOD & DRUG ADMIN., *Added Sugars: Now Listed on the Nutrition Facts Label* (Mar. 2020).

contains at least 20 percent of the Daily Value per RACC.

50. Contrary to being low in sugar, the Product is high in sugar and "pose[s] a specific risk of harm to consumers seeking to lower their sugar consumption, including those with diet-related diseases, such as Type 2 diabetes."[16]

51. According to the Center for Science in the Public Interest:

> Consumers relying on these statements are misled to believe they are following the DGA's advice and "selecting beverages low in added sugars," even as they consume beverages that are actually high in added sugars. This violates both FDA's regulation of nutrient content claims, and the agency's general prohibition against labeling that is false or misleading.

## RELIANCE AND ECONOMIC INJURY

52. Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud consumers.

53. When purchasing the Products, Plaintiffs sought a product that was low in sugar, as represented by Defendant's front label.

54. Plaintiffs read and relied on Defendant's false and misleading product name (*i.e.*, "Sorta Sweet"), statements, and claims in its labeling and advertising of the Products.

55. Plaintiffs also saw and relied on statements on the Products' packaging, which misleadingly emphasize "Sorta Sweet" even though the Products are high in sugar.

56. Defendant has sold more of the Products, at higher prices per unit, than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

57. The marketing of the Product as "Sorta Sweet" has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

58. The value of the Product that Plaintiffs purchased and consumed was materially less than its value as represented by Defendant.

59. Plaintiffs lost money as a result of Defendant's deception in that Plaintiffs did not receive what they paid for.

---

[16] *Id.*

60. Plaintiffs altered their position to their detriment and suffered damages in an amount equal to the amount they paid for the Products.

61. Had Plaintiffs and the Class Members known the truth, they would not have bought the Product or would have paid less for it.

62. As a result of the false and misleading labeling at issue, the Product is sold at a premium price, approximately no less than $1.49 per 18.5-ounce unit, excluding tax, compared to other similar products represented in a non-misleading way.

## CLASS ACTION ALLEGATIONS

63. Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23 in their representative capacity on behalf of themselves and a Class (as defined below) of other similarly situated consumers. Subject to additional information obtained through further investigation and/or discovery, the following definition of the Class may be expanded or narrowed. The putative Class is defined as follows:

> All persons who have purchased the "Sorta Sweet" Straight Up Tea beverage for their own use, and not for resale, in California, at any time from June 25, 2016, to time of trial in the above-captioned case. Excluded from the Class are: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

64. For the purposes of this Complaint, the term "Class Members" or "the Class" refers to all members of the Class, including the Plaintiff Sommer, unless otherwise noted.

65. For the purposes of this Complaint, the term "Class Period" refers to any time from June 25, 2016, to the time of trial in the above-captioned case.

66. This action is maintainable as a class action under Federal Rules of Civil Procedure Rule 23(a), (b)(2), and (b)(3).

67. **Numerosity**. The Class consists of thousands of persons throughout the State of California. The Class is so numerous that joinder of all members is impracticable, and the disposition of the Class Members' claims in a class action will benefit the parties and the Court.

68. **Commonality and Predominance**. The questions of law and fact common to the

Class have the capacity to generate common answers that will drive resolution of this action. They predominate over any questions affecting only individual class members. Common questions of law and fact include, but are not limited to, the following:

    (a)    Whether Keurig Dr Pepper contributed to, committed, or is responsible for the conduct alleged herein;

    (b)    Whether Keurig Dr Pepper's conduct constitutes the violations of law alleged herein;

    (c)    Whether Keurig Dr Pepper acted willfully, recklessly, negligently, or with gross negligence in committing the violations of law alleged herein;

    (d)    Whether Class Members are entitled to injunctive relief; and

    (e)    Whether Class Members are entitled to restitution and damages.

69. By seeing the name, labeling, display, and marketing of the Products, and by purchasing the Products, all Class Members were subject to the same wrongful conduct.

70. Absent Keurig Dr Pepper's material deceptions, misstatements, and omissions, Plaintiffs and the other Class Members would not have purchased the Products.

71. **Typicality**. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased the Products and were injured thereby. The claims of Plaintiffs and the other Class Members are based on the same legal theories and arise from the same false, misleading, and unlawful conduct.

72. **Adequacy**. Plaintiffs are adequate representative of the Class because Plaintiffs' interests do not conflict with those of other Class Members. Each Class Member seeks damages reflecting a similar and discrete purchase or purchases that each Class Member made. Plaintiffs have retained competent and experienced class action counsel, who intend to prosecute this action vigorously. The Class Members' interests will be fairly and adequately protected by Plaintiffs and Plaintiffs' counsel.

73. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because joinder of all Class Members is impracticable. The amount at stake for each consumer, while significant, is such that individual litigation would

be inefficient and cost-prohibitive. Plaintiffs anticipate no difficulty in the management of this action as a class action.

74. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

75. **Rule 23(b)(2)**. This Court should certify a class under Rule 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Class, by making illegal, unfair, misleading, and deceptive representations and omissions regarding the Products.

76. **Notice to the Class**. Plaintiffs anticipate that this Court can direct notice to the Class, to be effectuated by publication in major media outlets and the Internet.

**FIRST CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**Violation of California Business and Professions Code section 17200 *et seq.* –**
**Unlawful Conduct Prong**

77. Plaintiffs incorporate by reference all preceding paragraphs.

78. California Business and Professions Code section 17200 ("UCL") prohibits any "unlawful, unfair or fraudulent business act or practice."

79. Defendant, in its advertising and packaging of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products. Specifically, Defendant labeled the Products "Sorta Sweet" when the Products contain a high level of sugar.

80. Defendant's representations on its labeling and advertisements led and continue to lead reasonable consumers, including Plaintiffs and the Class Members, to believe that the Products are low in sugar content.

81. Defendant does not have any reasonable basis for the claims at issue about the Products made in Defendant's advertising and on Defendant's packaging or label because the Products are high in sugar.

82. Defendant knew and continues to know that the Products are not "Sorta Sweet." Despite this, Defendant continued to intentionally advertise and market the Products to deceive reasonable consumers into believing that the Products were low in sugar.

83. Defendant's packaging, labeling, and advertising of the Products, as alleged in the preceding paragraphs, are false, deceptive, misleading, and unreasonable and constitute unlawful conduct.

84. Each of the challenged statements made and actions taken by Keurig Dr Pepper violates, as detailed below, California's Consumers Legal Remedies Act and California's False Advertising Law and therefore violates the "unlawful" prong of the UCL.

85. Keurig Dr Pepper leveraged its deception to induce Plaintiffs and the members of the Class to purchase Products that were of lesser value and quality than advertised.

86. Keurig Dr Pepper's deceptive advertising caused Plaintiffs and the members of the Class to suffer injury in fact and to lose money or property, as it denied them the benefit of the bargain when they decided to purchase the Products over other options that are less expensive and are not advertised as low in sugar. Had Plaintiffs and the members of the Class been aware of Keurig Dr Pepper's false and misleading advertising tactics, they would not have purchased the Products at all, or would have paid less than what they did for them.

87. In accordance with California Business and Professions Code section 17203, Plaintiffs seek an order enjoining Keurig Dr Pepper from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

88. Plaintiffs also seek an order for disgorgement and restitution of all monies from the sale of the Products that were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

**SECOND CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**Violation of California Business and Professions Code section 17200 *et seq.* –**
**Unfair and Fraudulent Conduct Prongs**

89. Plaintiffs incorporate by reference all preceding paragraphs.

90. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice."

91. The false and misleading labeling of the Products, as alleged herein, constitutes "unfair" business acts and practices because such conduct is immoral and unscrupulous and

offends public policy. Further, the gravity of Keurig Dr Pepper's conduct outweighs any conceivable benefit of such conduct.

92. The acts, omissions, misrepresentations, practices, and non-disclosures of Keurig Dr Pepper, as alleged herein, constitute "fraudulent" business acts and practices because Keurig Dr Pepper's conduct is false and misleading to Plaintiffs and the members of the Class.

93. Keurig Dr Pepper's labeling and marketing of the Products is likely to deceive the Class Members about the sugar content of the Products.

94. Keurig Dr Pepper either knew or reasonably should have known that the claims and statements on the labels of the Products were likely to deceive consumers.

95. In accordance with California Business and Professions Code section 17203, Plaintiffs seek an order enjoining Keurig Dr Pepper from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

96. Plaintiffs also seek an order for disgorgement and restitution of all monies from the sale of the Products that were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

**THIRD CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**Violation of California Business and Professions Code section 17500 *et seq.* –**
**False and Misleading Advertising**

97. Plaintiffs incorporate by reference all preceding paragraphs.

98. California's False Advertising Law (California Business and Professions Code sections 17500 and 17508) prohibits "mak[ing] any false or misleading advertising claim."

99. Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers.

100. As alleged herein, Keurig Dr Pepper, in its labeling of the Products, makes false and misleading advertising claims, as it deceives consumers as to sugar content of the Products.

101. Keurig Dr Pepper knew or should have known that its labeling and marketing was likely to deceive consumers.

15

102. As a result, Plaintiffs and the Class seek injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Keurig Dr Pepper was unjustly enriched.

**FOURTH CLAIM**
**(ON BEHALF OF THE CALIFORNIA CLASS)**
**Violation of California Civil Code section 1750 *et seq.* –**
**Consumers Legal Remedies Act**

**(Injunctive Relief Only)**

103. Plaintiffs incorporate by reference all preceding paragraphs.

104. California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), adopts a statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

105. Keurig Dr Pepper's policies, acts, and practices were designed to, and did, result in the purchase and use of the Products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

(a) Section 1770(a)(2), which prohibits representing that goods have a particular composition or contents that they do not have;

(b) Section 1770(a)(5), which prohibits representing that goods have characteristics, uses, benefits, or ingredients that they do not have;

(c) Section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another;

(d) Section 1770(a)(9), which prohibits advertising goods with intent not to sell them as advertised; and

(e) Section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

106. As a result of Defendant's false and misleading conduct described herein, in accordance with California Civil Code section 1780(a)(2), Plaintiffs and the members of the

1  Class have suffered irreparable harm and seek equitable relief in the form of an order enjoining
2  Keurig Dr Pepper from continuing to engage in the deceptive practices described above;
3  requiring Keurig Dr Pepper to provide public notice of the true nature the Products; and
4  enjoining Keurig Dr Pepper from such deceptive business practices in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and other members of the proposed Class herein, pray for judgment and relief on all the legal claims and respectfully request the Court to enter an Order:

1. certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;
2. declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;
3. declaring that Defendant has committed the violations of law alleged herein;
4. providing for any and all injunctive relief the Court deems appropriate;
5. awarding statutory damages in the maximum amount for which the law provides;
6. awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;
7. providing for any and all equitable monetary relief the Court deems appropriate;
8. awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;
9. awarding Plaintiff her reasonable costs and expenses of suit, including attorneys' fees;
10. awarding pre- and post-judgment interest to the extent the law allows; and providing such further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

Date: June 25, 2020

Respectfully submitted,          **REESE LLP**

By: */s/ Michael R. Reese*
Michael R. Reese (State Bar No. 206773)
100 West 93rd Street, 16th Floor
New York, New York 10025-7524
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

**REESE LLP**
George V. Granade (State Bar No. 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272
*ggranade@reesellp.com*

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan (to be admitted *pro hac vice*)
505 Northern Boulevard, Suite 311
Great Neck, New York 11021-5101
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

*Counsel for Plaintiff Robbin Sommer
and the Proposed Class*