**BAKER BOTTS L.L.P.**
Jonathan Patchen (Cal. Bar No. 237346)
jonathan.patchen@bakerbotts.com
Ariel D. House (Cal. Bar No. 280477)
ariel.house@bakerbotts.com
101 California Street, Suite 3600
San Francisco, California 94111
Telephone:   (415) 291-6200
Facsimile:    (415) 291-6300

Natalie K. Sanders (Cal. Bar No. 329916)
natalie.sanders@bakerbotts.com
1001 Page Mill Road, Bldg. One, Suite 200
Palo Alto, CA  94304
Telephone: (650) 739-7500
Facsimile: (650) 739-7699

Attorneys for Defendant
SNAPPLE BEVERAGE CORPORATION

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBBIN SOMMER,<br><br>                    Plaintiff,<br><br>          v.<br><br>SNAPPLE BEVERAGE<br>CORPORATION,<br><br>                    Defendant. | Case No. 4:20-cv-04181-JST<br><br>Judge: The Honorable Jon S. Tigar<br><br>**DEFENDANT SNAPPLE BEVERAGE CORPORATION'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><u>Hearing Date</u>: March 3, 2021<br><u>Time</u>: 2:00 p.m.<br><u>Location</u>: Oakland Courthouse, Courtroom 6 – 2nd Floor, 1301 Clay Street, Oakland CA 94612<br><br><u>Action Filed</u>: June 24, 2020 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND REQUESTED RELIEF ................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTUAL BACKGROUND ....................................................................................... 3

    A.   The "Sorta Sweet" Tea Label ........................................................................... 3

    B.   Plaintiff's Allegations ....................................................................................... 3

    C.   Plaintiff's Counsel's Similar Lawsuits Against Other Tea Products ................ 5

    D.   The FAC Was Preceded by a Detailed Meet-and-Confer Process .................... 5

III. LEGAL STANDARD ................................................................................................... 6

IV.  ARGUMENT ................................................................................................................ 6

    A.   Plaintiff does not plausibly allege that "Sorta Sweet" is an implied "Low Sugar" claim, which mandates dismissal of her entire complaint. ...................... 7

        1.   Plaintiff's allegations of a supposed "implied" low-sugar claim are conclusory. ............................................................................................... 7

        2.   The phrase "Sorta Sweet" cannot plausibly be alleged to be an implied "low sugar" claim. ...................................................................... 8

            a.   The word "sweet" does not necessarily refer to sugar content. .............................................................................................. 8

            b.   "Sorta" does not mean "low" in quantity. ....................................... 9

            c.   This court should stay or dismiss the unlawful claim to allow the FDA to exercise primary jurisdiction. ........................... 11

            d.   Plaintiff's residual claims are preempted. ..................................... 12

    B.   Plaintiff does not plausibly allege facts sufficient to show that a substantial portion of reasonable consumers have been deceived by "Sorta Sweet." ........... 13

        1.   Plaintiff's conclusory allegations of deception are inadequate. ............... 14

        2.   Plaintiff could not plausibly allege reasonable consumer deception. ....... 15

            a.   "Sorta Sweet" does not mean "low in sugar". ............................... 15

            b.   The context surrounding "Sorta Sweet" precludes the alleged consumer deception. ....................................................... 16

           c.      At most, "Sorta Sweet" is non-actionable puffery upon which no reasonable consumer relies. ........................................... 20

    C.     Plaintiff's Complaint, even if not fully dismissed, is still subject to partial dismissal........................................................................................................ 21

          1.     Plaintiff lacks standing to pursue injunctive relief because she cannot be deceived again by the label........................................................ 21

          2.     Plaintiff's CLRA claim must be dismissed because she failed to file an affidavit of proper venue under Cal. Civ. Code § 1780(d). ........... 23

    D.     Leave to amend should be denied. ....................................................................... 24

V.     CONCLUSION............................................................................................................... 25

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Alvarez v. Chevron Corp.*,
    656 F.3d 925 (9th Cir. 2011) ..................................................................................................25

*Anunziato v. eMachines, Inc.*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005) ..................................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)....................................................................................................................6

*Becerra v. Coca-Cola Co.*,
    No. C 17-05916 WHA, 2018 WL 1070823 (N.D. Cal. Feb. 27, 2018), *appeal dismissed*, 789
    F. App'x 25 (9th Cir. 2019) .....................................................................................................19

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) ...............................................................................8, 10, 13, 19

*Beckman v. Arizona Canning Co., LLC*,
    No. 316CV02792JAHBLM, 2019 WL 4277393 (S.D. Cal. Sept. 9, 2019) ...............16, 17, 18

*Chacanaca v. Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ..................................................................................13

*Cheslow v. Ghirardelli Chocolate Co.*,
    445 F. Supp. 3d 8 (N.D. Cal. 2020) ..................................................................................16, 19

*City of Imperial Beach v. Int'l Boundary & Water Comm'n-United States Section*,
    337 F. Supp. 3d 916 (S.D. Cal. 2018)........................................................................................6

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..................................................................................................................22

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008) .................................................................................................11

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
    911 F.2d 242 (9th Cir. 1990) ...................................................................................................20

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ...............................................................................................22, 23

*Delman v. J. Crew Grp., Inc.*,
    No. CV 16-9219-MWF (ASX), 2017 WL 3048657 (C.D. Cal. May 15, 2017).....................16

*DeMarco v. DepoTech Corp.*,
  149 F. Supp. 2d 1212 (S.D.Cal.2001) ...................................................................7

*Dvora v. Gen. Mills, Inc.*,
  No. 11-CV-1074, 2011 WL 1897349 (C.D. Cal. May 16, 2011) ...........................13

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) .........................................................................6, 17

*Epstein v. Wash. Energy Co.*,
  83 F.3d 1136 (9th Cir. 1996) .................................................................................6

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013) ................................................................................16

*Fisher v. Tice*,
  No. 15CV955 (LAK) (DF), 2016 WL 4626205 (S.D.N.Y. July 5, 2016) ...............9

*Foust v. City of Page*,
  No. CV-12-08115-PCT-DGC, 2014 WL 3340916 (D. Ariz. July 8, 2014) .......... vii, 7

*Gasser v. Kiss My Face, LLC*,
  No. 17-CV-01675-JSC, 2018 WL 4847071 (N.D. Cal. Apr. 4, 2018) ...................16

*Geffner v. Coca-Cola Co.*,
  928 F.3d 198 (2d Cir. 2019) ....................................................................8, 16, 19

*Hadley v. Kellogg Sales Co.*,
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) ...........................................................12, 21

*Hamm v. Mercedes-Benz USA, LLC*,
  No. 16-cv-03370-EJD, 2017 WL 4168573 (N.D. Cal. Sept. 20, 2017)...................24

*Handy v. LogMeIn, Inc.*,
  No. 1:14-CV-01355 - JLT, 2015 WL 4508669 (E.D. Cal. July 24, 2015) .............15

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
  802 F. Supp. 2d 1070 (N.D. Cal. 2011) ...............................................................24

*Joslin v. Clif Bar & Co.*,
  No. 4:18-CV-04941, 2019 WL 5690632 (N.D. Cal. Aug. 26, 2019) .....................22

*Krommenhock v. Post Foods, LLC*,
  255 F. Supp. 3d 938 (N.D. Cal. 2017) ..................................................................20

*Krommenhock v. Post Foods, LLC*,
  No. 16-CV-04958-WHO, 2018 WL 1335867 (N.D. Cal. Mar. 15, 2018).............21

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ...............................................................................13

*Lilly v. ConAgra Foods, Inc.*,
   743 F.3d 662 (9th Cir. 2014) ..................................................................16

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..................................................25

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)...........................................................................21, 22

*Manuel v. Pepsi-Cola Co.*,
   No. 17 CIV. 7955 (PAE), 2018 WL 2269247 (S.D.N.Y. May 17, 2018), *aff'd*, 763 F. App'x
   108 (2d Cir. 2019).................................................................................16

*Prescott v. Nestle USA, Inc.*,
   No. 19-CV-07471-BLF, 2020 WL 3035798 (N.D. Cal. June 4, 2020) ...........................22, 23

*Rosillo v. Annie's Homegrown Inc.*,
   No. 17-CV-02474-JSW, 2017 WL 5256345 (N.D. Cal. Oct. 17, 2017)................................12

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) .................................................................6

*Salazar v. Honest Tea, Inc.*,
   74 F. Supp. 3d 1304 (E.D. Cal. 2014).....................................................20

*Silva v. Unique Beverage Co., LLC*,
   No. 3:17-CV-00391-HZ, 2017 WL 4896097 (D. Or. Oct. 30, 2017).....................................16

*Steckman v. Hart Brewing Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ...............................................................24

*Steverson v. Walmart*,
   No. 3:19-CV-00140, 2019 WL 3822179 (M.D. Tenn. Aug. 15, 2019)....................................7

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009).............................................................................22

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
   307 F.3d 775 (9th Cir. 2002) .................................................................11

*Telesaurus VPC, LLC v. Power*,
   623 F.3d 998 (9th Cir. 2010) .................................................................24

*Vess v. Ciba–Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .................................................................6

*Viggiano v. Hansen Nat. Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) .....................................................8

*Vitt v. Apple Computer, Inc.*,
  469 Fed. Appx. 605 (9th Cir. 2012)...................................................................20

*Walker v. B&g Foods, Inc.*,
  No. 15-CV-03772-JST, 2016 WL 463253 (N.D. Cal. Feb. 8, 2016).......................11

*Werbel ex rel. v. Pepsico, Inc.*,
  No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010 .............20

*Williams v. California*,
  764 F.3d 1002 (9th Cir. 2014) ..................................................................6, 17

**FEDERAL STATUTES**

21 U.S.C. § 343-1(a)(5) ....................................................................................13

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ..........................................................................4

Cal. Bus. & Prof. Code § 17500, et seq. ...............................................................4

Cal. Civ. Code § 1750...........................................................................................4

Cal. Civ. Code § 1780....................................................................................23, 24

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 8 ................................................................................................15

Fed. R. Civ. P. 9 ............................................................................................6, 13

Fed. R. Civ. P. 10 ...............................................................................................7

Fed. R. Civ. P. 12 ...........................................................................................1, 6

Fed. R. Civ. P. 15 .............................................................................................25

**FEDERAL REGULATIONS**

21 C.F.R. § 101.60 .......................................................................................11, 12

21 C.F.R. § 105.66 ..............................................................................................9

**OTHER AUTHORITIES**

Anahad O'Connor, "Are Foods Labeled 'Low Sugar' Misleading Consumers?" NEW YORK
  TIMES, February 26, 2020, available at: https://www.nytimes.com/2020/02/26/well/eat/are-
  foods-labeled-low-sugar-misleading-consumers.html...................................11, 12

Elizabeth Crawford, "Consumers seek 'low sugar' claims, but remain confused & distrustful of
   nutrition labeling," November 23, 2016, available at: https://www.foodnavigator-
   usa.com/Article/2016/11/23/Consumer-s-seek-low-sugar-claims-but-distrust-labeling...14, 15

Lindsey Smith Taillie, et al., "No fat, no sugar, no salt … no problem? Prevalence of "low-
   content" nutrient claims and their associations with the nutritional profile of food and
   beverage purchases in the United States," J. Acad. Nutr. Diet, Sept. 2017; 117(9), available
   at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5573644/. ............................................15

## NOTICE OF MOTION AND REQUESTED RELIEF

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 3, 2021, at 2:00 p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Jon S. Tigar, located at the Oakland Courthouse, Courtroom 6 on the 2nd Floor, 1301 Clay Street, Oakland, California 94612, either in-person or by such remote means as the Court shall permit, order, or direct, Defendant Snapple Beverage Corporation ("Defendant" or "Snapple") will and hereby does move this Court pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the First Amended Class Action Complaint ("FAC") with prejudice.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiff has plausibly alleged that "Sorta Sweet" is an implied "Low in Sugar" claim in violation of FDA food labeling regulations?

2.      Whether Plaintiff's implied "Low in Sugar" claim should be stayed or dismissed under the primary jurisdiction doctrine?

3.      Whether Plaintiff's claims that "Sorta Sweet" is deceptive and misleading are preempted under the Nutrition Labeling and Education Act?

4.      Whether Plaintiff has plausibly alleged sufficient facts to show that a substantial portion of reasonable consumers would be deceived or misled by the words "Sorta Sweet" on this bottled tea?

5.      Whether Plaintiff's request for injunctive relief should be dismissed because she cannot be deceived again by the label in the future, given that it contains an accurate Nutrition Facts panel and Ingredients List?

6.      Whether Plaintiff's claim under the California Consumer Legal Remedies Act should be dismissed due to her failure to file the requisite affidavit of proper venue?

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

This is the latest in a series of cases that Plaintiff's counsel has filed across the country to challenge the labeling of bottled teas.  Defendant's Straight Up Tea™ brand has three products:

"Unsweetened" tea, "Sorta Sweet" tea, and "Sweet" tea.   Here, Plaintiff Robbin Sommer ("Plaintiff") only challenges the "Sorta Sweet" tea, and Plaintiff's claims are *solely* based on the "Sorta Sweet" description on the label.   Plaintiff contends that "Sorta Sweet" is an affirmative representation that the tea is low in sugar, allegedly in violation of FDA regulations and misleading her and other consumers.

Plaintiff's allegations are fanciful, not plausible.   Dispositive of all Plaintiff's claims is that the challenged phrase "Sorta Sweet" cannot reasonably be read to mean "low in sugar."   The plain meaning of the phrase indicates that "Sweet" refers to the product's taste and that "Sorta" means "kind of" or somewhat.   Thus, "Sorta Sweet" means exactly what it says—the taste of the tea is somewhat sweet.   No regulations are violated.   No reasonable consumer is misled.

Nor can Plaintiff plausibly allege that the "Sorta Sweet" label is misleading for several additional reasons.   "Sorta Sweet" is not read in a vacuum.   Rather, "Sorta Sweet" is part of a food label, which has both a Nutrition Facts panel and an Ingredients List.   Those portions of the label accurately disclose the sugar content and ingredients, which include real sugar.   No reasonable consumer goes through the mental gymnastics of redefining the puffery of "Sorta Sweet" to mean "low in sugar" while simultaneously ignoring the portions of the label that undo that implausible interpretation.   In addition, Straight Up Tea™ offers for sale two other varieties—the "Unsweetened" and "Sweet" versions.   And relative to its counterparts, "Sorta Sweet" is entirely accurate, even if it could be referring to sugar: "Unsweetened" has no sugar; "Sorta Sweet" has 21 grams of sugar; and "Sweet" has 45 grams of sugar.   Each of these perspectives dispels any plausible allegation that reasonable consumers are misled.   And no reasonable consumer would rely on "Sorta Sweet" to indicate the sugar content of the tea.   "Sorta Sweet" is precisely the kind of subjective statement, rather than an objective fact, that courts routinely find to be non-actionable puffery.

Plaintiff's claims have other fatal problems.   She asks for injunctive relief, but she has no standing to make that claim.   She faces no risk of future harm—she cannot be (unreasonably) deceived by the words "Sorta Sweet" again, now that she knows the tea's sugar content and can verify it anytime by looking at its Nutrition Facts panel.   Moreover, ignoring the clear statutory

1  requirement, Plaintiff failed to attach the requisite CLRA venue affidavit, mandating dismissal.

2      Defendant has met-and-conferred with Plaintiff's counsel on these issues, and also

3  provided Plaintiff's counsel with a detailed written letter explaining the defects in the complaint.

4  Defendant consented to Plaintiff filing an amended complaint so as to afford Plaintiff the

5  opportunity to consider Defendant's arguments and put forth her strongest pleading.  That pleading

6  is still deficient, and as a result, the FAC should now be dismissed without leave to amend.

7  **II.     FACTUAL BACKGROUND**

8      **A.     The "Sorta Sweet" Tea Label**

9      Straight Up Tea™ is a trademarked bottled tea brand owned by Snapple Beverage

10 Corporation.  *See* Declaration of Aaron Willmon ("Willmon Decl.") at ¶ 3; *id.* ¶ 4, Ex. A; *see also*

11 Request for Judicial Notice ("RJN") at 1–2.  Straight Up Tea™ offers three varieties of bottled tea,

12 which are sold alongside one another for the exact same price: "Unsweetened" tea, "Sorta Sweet"

13 tea, and "Sweet" tea.  *Id.* ¶¶ 4–6, Exs. A–C; *see also* RJN at 1–2.  Plaintiff does not challenge

14 anything about the labeling of the "Unsweetened" or the "Sweet" tea varieties of Straight Up

15 Tea™.  *See generally*, FAC.

16     The "Sorta Sweet" label contains a Nutrition Facts panel, identifying that the beverage

17 contains 21 grams of sugar and 90 calories.  *Id.* ¶ 4, Ex. A.[1]  Plaintiff does not challenge the

18 Nutrition Facts panel.  The label also contains an Ingredients List that identifies the five ingredients

19 in the beverage: filtered water, sugar, tea, natural flavors, and citric acid.  *Id.*  Plaintiff does not

20 challenge the Ingredients List.

21     **B.     Plaintiff's Allegations**

22     The FAC contains only a few sentences about the Plaintiff who brought this lawsuit.  *See*

23 FAC ¶¶ 9–13.  The FAC alleges that Plaintiff purchased "Sorta Sweet" tea only once, sometime

24 "in June 2019."  *Id.* ¶ 11.  Plaintiff alleges that she "read and relied upon the 'Sorta Sweet'

25 representation when she purchased" the tea.  *Id.* ¶¶ 12, 60.  Plaintiff does not allege what the "Sorta

26

27 [1]     Conversely, the Nutrition Facts panel for the "Unsweetened" variety states that it contains
   zero calories and zero grams of sugar, *id.* ¶ 5, Ex. B; while the Nutrition Facts panel for the "Sweet"
28 variety states that it contains 180 calories and 45 grams of sugar, *id.* ¶ 6, Ex. C.

Sweet" representation was.  And while Plaintiff alleges that she "believed that the Products were, in fact, low in sugar," she does not allege that it was the "Sorta Sweet" phrase that caused her to believe "that the Products were, in fact, low in sugar."  *Id.*  Plaintiff contends that she would not have purchased "Sorta Sweet" tea if she knew the tea's sugar content, *id.* ¶ 13, but fails to explain why she didn't review the Ingredients List at the time (or when and why she eventually decided to review the Ingredients List), and why she didn't choose to purchase the "Unsweetened" tea instead, given that it contains zero sugar and is offered for sale alongside "Sorta Sweet" tea.

The FAC relies on generic allegations about excessive sugar consumption and potential related health effects, *id.* ¶¶ 17–20, and inapplicable FDA regulations, *id.* ¶¶ 33–37.  The FAC alleges that "better educated consumers" are seeking to reduce their sugar intake, *id.* ¶¶ 21–25, and argues that "reasonable consumers … 'expect a reduction in sugar content to deliver in a reduction in calorie content,'" *id.* ¶ 39, but simultaneously contends that consumers are somehow confused about how to reduce their sugar intake, *id.* ¶¶ 27–29, 30–31.  The FAC contains entirely conclusory allegations that "[t]he representation as 'Sorta Sweet' is understood by consumers to indicate the Products are low in sugar and lower in sugar than it is."  *Id.* ¶ 32; *see also id.* ¶ 30.  The only support in the FAC for that legal conclusion is a January 2020 letter from the Center for Science in the Public Interest ("CSPI"), an advocacy group, directed to the FDA, that makes the exact same assertion.  *Id.* ¶¶ 44–46 (citing Ex. A).

Based on those allegations, Plaintiff alleges the following claims: (1) violation of the Unfair Competition Law, California Business and Professions Code § 17200—the "unlawful conduct" prong, based on the theory that "Sorta Sweet" is an implied low sugar claim, (2) violation of the Unfair Competition Law, California Business and Professions Code § 17200—the "unfair and fraudulent conduct" prongs, (3) violation of the False Advertising Law, California Business and Professions Code §§ 17500 and 17508, and (4) violation of the Consumer Legal Remedies Act, California Civil Code § 1750.  *Id.* ¶¶ 83–132.

### C.     Plaintiff's Counsel's Similar Lawsuits Against Other Tea Products

Plaintiff's counsel began filing similar lawsuits against other bottled tea products in January 2020—six months before filing this case.  To date, Plaintiff's counsel has filed three other lawsuits in New York challenging Honest Tea's "Just a Tad Sweet" tea,[2] Gold Peak Tea's "Slightly Sweet" tea,[3] and Steaz Iced Tea's "Lightly Sweetened" tea.[4]  Each lawsuit is based on the same flawed premise: that a description of the tea's sweetness, using a variation of the word "Sweet," is an affirmative representation regarding the tea's sugar content that is deceptive or misleading.

### D.     The FAC Was Preceded by a Detailed Meet-and-Confer Process

The parties met-and-conferred regarding Defendant's intent to move to dismiss the complaint on November 12, 2020.  *See* Declaration of Ariel House ("House Decl.") ¶ 3.  During the conference, Defendant's counsel explained the deficiencies in the complaint in detail.  In an effort to avoid multiple rounds of motions to dismiss, the parties agreed that Defendant's counsel would provide a written letter explaining the grounds for dismissal by November 20, 2020, and Plaintiff's counsel would either elect to stand on the complaint or file a first amended complaint by December 11.  *Id.*  The parties then filed a stipulation setting forth that agreement, *see id.* ¶ 4; *see also* Dkt. No. 20, and on November 20, Defendant's counsel sent a detailed letter describing its arguments as to why the complaint should be dismissed.  *Id.* ¶ 5, Ex. A.

Plaintiff's counsel did not file an amended complaint on December 11.  *Id.* ¶ 6.  As a result, Defendant's counsel informed Plaintiff's counsel that it understood that Plaintiff had elected to stand on the original complaint, and that Defendant would take the position that the Court should not grant leave to amend because Plaintiff has foregone the opportunity to amend.  *Id.* ¶ 6, Ex. B. Plaintiff's counsel subsequently asserted that not filing an amended complaint by the deadline had been an oversight, and rather than hold Plaintiff to her original complaint, Defendant's counsel agreed to extend the deadline for Plaintiff to file an amended complaint.  *Id.* ¶ 7, Ex. C.  The parties entered into another stipulation extending the deadline for Plaintiff's counsel to file an amended

---

[2]     *Batchelor v. Coca-Cola Co.*, S.D.N.Y. Case No. 7:20-cv-00594-NSR (January 23, 2020).
[3]     *Salerno v. The Coca-Cola Co.,* S.D.N.Y. Case No. 7:20-cv-05235-NSR (February 8, 2020).
[4]     *Taylor v. Tipp Distributors, Inc.,* E.D.N.Y. Case No. 1:20-cv-00712 (February 9, 2020).

1 complaint in response to Defendant's letter, *see* Dkt. No. 25, and the amended complaint was filed.

2 *See* Dkt. No. 24.

3 **III.   LEGAL STANDARD**

4       A complaint "must contain factual allegations sufficient to 'state a claim to relief that is

5 plausible on its face.'" *Williams v. California*, 764 F.3d 1002, 1007 (9th Cir. 2014) (citation

6 omitted).  "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a

7 motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140

8 (9th Cir. 1996) (citation omitted).  "Determining whether a complaint states a plausible claim for

9 relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience

10 and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Ashcroft

11 v. Iqbal*, 556 U.S. 662, 679 (2009)).  Additionally, fraud claims are subject to a heightened standard

12 under Federal Rule of Civil Procedure 9(b) and must be pleaded with particularity.  This is true of

13 all of Plaintiff's claims here which must "be accompanied by the who, what, when, where, and

14 how of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1103, 1106 (9th

15 Cir. 2003) (quotation marks omitted).

16       Moreover, "[f]ederal courts are courts of limited jurisdiction," and "[t]here is no subject

17 matter jurisdiction without standing." *City of Imperial Beach v. Int'l Boundary & Water Comm'n-

18 United States Section*, 337 F. Supp. 3d 916, 923 (S.D. Cal. 2018).  Under a facial Rule 12(b)(1)

19 challenge, as Defendant brings here, the court must consider whether "the allegations contained in

20 [the] complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone

21 v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

22 **IV.   ARGUMENT**

23       Plaintiff's complaint is premised on two core contentions.  First, that "Sorta Sweet" is an

24 "unauthorized implied low sugar claim." FAC ¶ 46.  Second, that "Sorta Sweet" is understood by

25 reasonable consumers as a low-in-sugar representation and is thus misleading and deceptive.  But

26 Plaintiff does not, and cannot, plausibly allege either of these; her complaint should be dismissed.

27

28

1

2

### A. <u>Plaintiff does not plausibly allege that "Sorta Sweet" is an implied "Low Sugar" claim, which mandates dismissal of her entire complaint.</u>

3

4

5

6

7

Plaintiff's allegations of an implied "low sugar" claim consist of alleging that the Center for Science in the Public Interest ("CSPI") wrote the FDA a letter in January 2020 claiming that a number of tea brands and names, including "Sorta Sweet" tea, were making implied "low sugar" claims. *See* FAC ¶¶ 44–46. Plaintiff appears to hope that by restating the CSPI's argument and attaching the CPSI's letter, it will satisfy her pleading obligation. This gambit will not work for two reasons.

8

9

### 1. <u>Plaintiff's allegations of a supposed "implied" low-sugar claim are conclusory.</u>

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The sufficiency of a plaintiff's pleading is evaluated based on what the plaintiff actually pleaded. Here, Plaintiff's allegations are limited, unsupported, and conclusory. In just six lines of pleading, Plaintiff thrice quotes the CSPI letter, attached as Exhibit A, in a series of conclusory allegations. *See* FAC ¶¶ 44–46. This is improper: Federal Rule of Civil Procedure 10(c) only permits "written instrument[s]" to be considered part of the pleadings. A letter—not written by or sent to either party—cannot satisfy this requirement. *See, e.g., Foust v. City of Page,* No. CV-12-08115-PCT-DGC, 2014 WL 3340916, at *2 (D. Ariz. July 8, 2014) (holding that a notice of claim letter was not a written instrument under Rule 10(c)); *DeMarco v. DepoTech Corp.,* 149 F. Supp. 2d 1212, 1220 (S.D. Cal. 2001) ("'A written instrument' within the meaning of Rule 10(c) 'is a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement.'") (citation omitted); *Steverson v. Walmart,* No. 3:19-CV-00140, 2019 WL 3822179, at *3 (M.D. Tenn. Aug. 15, 2019) (holding that an email written by plaintiff and attached to the complaint "is not a 'written instrument' under Federal Rule of Civil Procedure 10(c), because it does not evidence legal rights or duties or give formal expression to any legal act or agreement … at most, [the email] contains additional allegations and expands on Plaintiffs' evidentiary narrative. Rule 10(c) does not permit this Court to rely on the email to supplement the allegations of the Complaint.").

27

28

A plaintiff does not satisfy her pleading burden by attaching an advocacy group's letter to her complaint and saying "me too." Here, the CSPI letter cannot be considered part of Plaintiff's

pleading.  Without the letter, the necessary components of Plaintiff's complaint consist exclusively of conclusory allegations.  Dismissal is the consequence.

### 2.   The phrase "Sorta Sweet" cannot plausibly be alleged to be an implied "low sugar" claim.

#### a.   The word "sweet" does not necessarily refer to sugar content.

Plaintiff's claims are entirely based on her interpretation of the words "Sorta Sweet" on the label of this bottled tea.  And this interpretation requires her to plausibly allege that the word "sweet" on a bottled tea *necessarily* refers to the tea's sugar content.

The FAC, however, does not contain any factual allegations establishing that part of its central premise.  The failure to allege "Sweet" means "Sugar" is glaring.  And it cannot be plausibly alleged.  Courts frequently turn to dictionaries to determine the plain meaning of words used on a product label.  *See, e.g., Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019) (relying on dictionary definitions to determine that in the context of a soft drink, the word "diet" is an adjective that refers to a sugar-free soda and not a promise of weight loss); *see also Geffner v. Coca-Cola Co.,* 928 F.3d 198, 200 (2d Cir. 2019) (same).  *See* RJN, at 2–3.  And here, dictionaries confirm that the word "sweet" as an adjective refers to taste.  For example, the Cambridge Dictionary defines "sweet" as an adjective describing "taste," which means "(especially of food or drink) having a taste similar to that of sugar; not bitter or salty."  *See* House Decl. ¶ 10, Ex. D.  Dictionary.com defines "sweet" as an adjective that means "having the taste or flavor characteristic of sugar, honey, etc.; producing the one of the four basic taste sensations that is not bitter, sour, or salt; not rancid or stale; fresh; not salt or salted."  *Id.* ¶ 11, Ex. E.   Similarly, Merriam-Webster's Dictionary defines sweet in the context "of a beverage" as "containing a sweetening ingredient; not dry."  *Id.* ¶ 12, Ex. F.

But while the word "sweet" on the label may suggest that the tea has a sweet taste like sugar, it does not *necessarily* mean that the tea contains sugar.  Consumers are familiar with many sweet products, such as diet soft drinks, which do not contain any sugar and are instead sweetened with other natural or artificial sweeteners.  *See, e.g., Viggiano v. Hansen Nat. Cor*p., 944 F. Supp. 2d 877, 892 n.38 (C.D. Cal. 2013) ("Diet sodas are ubiquitous in the United States").  In fact,

1   Snapple offers many well-known diet teas that have a sweet taste but contain zero sugar, including

2   Diet Peach Tea, Diet Lemon Tea, Diet Green Tea, Diet Takes 2 to Mango Tea, Diet Half 'n Half

3   (half iced tea and half lemonade), and Diet Trop-A-Rocka Tea.[5]  Additionally, natural, low-calorie

4   sweeteners such as Stevia have exploded in popularity in recent years, providing consumers with

5   an increasing number of beverages and products containing natural, low-calorie sweeteners,

6   instead of sugar.[6]

7          Even if the Court were to consider the CSPI letter a "written instrument" that could fill in

8   Plaintiff's missing allegations, *see* FAC ¶ 45, citing Ex. A, Dkt. No. 24–1, at 5, it fares no better.

9   That letter broadly asserts in a single paragraph that sweet is "generally understood to refer to

10  sugar."  Dkt. No. 24–1 at 5.  The only support for this assertion offered by the CSPI letter is that

11  the FDA regulations "sometimes require the disclosure 'Sweetened with nonnutritive

12  sweetener(s)' when sweetness is derived from an ingredient that does not contain sugar."  But the

13  regulation cited by the CPSI—21 C.F.R. § 105.66(b)(2)—is in the section of the regulations

14  addressing "[l]abel statements relating to usefulness in reducing or maintaining body weight."

15  Quite sensibly, in that specialized context, the FDA requires the label note the use of nonnutritive

16  sweetener (i.e., a sweetener that is not utilized in normal metabolism) for "[a]ny food that achieves

17  its special dietary usefulness in reducing or maintaining body weight through the use of a

18  nonnutritive sweetener."  *Id.*  This is hardly support—much less plausible support—for a broad

19  allegation that "Sweet" on the SortaSweet iced tea label means sugar.

20         In short, to survive dismissal, Plaintiff must allege that "sweet" inexorably means "sugar."

21  Plaintiff didn't even attempt to allege that necessary fact and the CSPI letter does not save her.

22  Given the plain meaning of the term "sweet," she cannot plausibly do so.

23                    **b.      "Sorta" does not mean "low" in quantity.**

24         Unlike "sweet," Plaintiff does at least try to allege a specific meaning of "sorta"—that it

25  refers to a "low" quantity.  But that effort is unavailing.

26

27  ---
    [5]    *See* https://www.snapple.com/products/filter/diet.
28  [6]    *See Fisher v. Tice*, No. 15CV955 (LAK) (DF), 2016 WL 4626205, at *2 n.2 (S.D.N.Y.
    July 5, 2016) ("'Stevia' is a natural sweetener derived from the stevia plant.").

1    To ascribe meaning to the word "Sorta," Plaintiff relies solely on the CSPI's letter, FAC

2   ¶¶ 44–46, which simply asserts that various words including "lightly," "sorta," "slightly" and "just

3   a tad" "are all synonymous with the word 'low,'" which "is defined as 'small in number or

4   amount.'"   Dkt. No. 24–1 at 5.   Again, assuming that citing to the CSPI letter is a "written

5   instrument" that *could* fill Plaintiff's pleading gap, it does not do so here.   While the CSPI letter

6   cites dictionary definitions for "slight," "tad," and "low," it cites *no definition* for "sorta."   *Id*. at 5

7   & nn. 19–21. The reason is obvious: "Sorta" does not mean "low."   The Oxford English Dictionary

8   defines "sorta" as "[i]n a way or manner; *to some extent* or degree, *somewhat*; in some way,

9   somehow."   *See* House Decl. ¶ 13, Ex. G, at 7.   Similarly, the Oxford Languages dictionary (the

10  source Google uses) defines "sorta" as "sort of" and, then, the definition of 'sort of' is that it is an

11  "informal" phrase and means "to some extent; in some way or other (***used to convey inexactness***

12  ***or vagueness***)."   *Id*. ¶ 14, Ex. H (emphasis added).   And the CSPI's own source—the Merriam-

13  Webster online dictionary—agrees: sorta means "to a degree" or "somewhat."   *Id*. ¶ 15, Ex. I, at

14  2.   Tellingly, the CSPI letter does not actually cite this, or any, definition of "sorta;" rather it just

15  asserts that "sorta" is like the words "lightly" or "slightly" and, therefore, it means "low."   Dkt.

16  No. 24–1 at 5.   While the CSPI's improper sleight-of-hand is not directly at issue here, Plaintiff's

17  uncritical and exclusive reliance on the CSPI's approach *is* at issue.   The plain meaning of "sorta"

18  does not mean "low;" Plaintiff cannot plausibly plead otherwise.

19                                   *          *          *

20    Thus, put together, the phrase "Sorta Sweet" can only be plausibly understood to mean

21  something like "moderately sweet," "somewhat sweet," or "sweet to some extent."   But just like

22  in *Becerra*, 945 F.3d at 1229, Plaintiff ignores the plain meaning of those words and improperly

23  relies on the CSPI's misleading letter to contend that "Sorta Sweet" should mean something

24  completely different—"Low in Sugar."   FAC ¶¶ 45–46.   That unreasonable interpretation is not

25  plausible.

26

27

28

1

###### c.   This court should stay or dismiss the unlawful claim to allow the FDA to exercise primary jurisdiction.

2        Plaintiff's attachment of the CSPI letter provides further reason to dismiss, or at the least,

3   stay, Plaintiff's implied low sugar claim under the primary jurisdiction doctrine.

4        That doctrine allows "courts to stay proceedings, or to dismiss a complaint without

5   prejudice, pending the resolution of an issue within the 'special competence of an administrative

6   agency.'"  *Walker v. B&g Foods, Inc.*, No. 15-CV-03772-JST, 2016 WL 463253, at *2 (N.D. Cal.

7   Feb. 8, 2016) (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)).  When

8   determining whether to apply the primary jurisdiction doctrine, courts consider four factors: "(1)

9   the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an

10  administrative body having regulatory authority (3) pursuant to a statute that subjects an industry

11  or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in

12  administration."  *Id.* (quoting *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775,

13  780 (9th Cir. 2002)).

14       Each of the four factors is satisfied here.  The CSPI raises the exact same "implied low

15  sugar claims" generally, and "Sorta Sweet" specifically, in its letter that Plaintiff makes here.

16  Congress, through the NLEA, gave both enforcement and rulemaking power to the FDA—powers

17  that the FDA has exercised in issuing sugar-labeling regulations (21 C.F.R. § 101.60) and taking

18  enforcement actions (e.g., FAC ¶ 43).  And there is obviously need for both expertise and

19  uniformity from the regulatory entity—not district courts—to draw lines as to what is, and is not,

20  an improper implied "low in sugar" claim.  Indeed, the CSPI Letter demands that the FDA "take

21  immediate enforcement action to prevent unauthorized implied 'low sugar' and 'reduced sugar'

22  claims … on beverages products that are high in sugar."  Dkt. No. 24–1 at 1.  The CSPI Letter also

23  asks the FDA "to move expeditiously to issue regulations authorizing "low added sugar" claims

24  to be made on products that are truly low in added sugars," and "to develop a per-RACC threshold

25  similar to that which is used for other 'low' nutrient content claims."  *Id.* at 7.  The FDA has stated

26  that it "was reviewing the letter from C.S.P.I. and planned to respond."[7]  That the FDA intends to

27

28  [7]    *See* Anahad O'Connor, "Are Foods Labeled 'Low Sugar' Misleading Consumers?" NEW YORK TIMES, February 26, 2020, available at: https://www.nytimes.com/2020/02/26/well/eat/are-

respond to the CSPI letter only strengthens the applicability of the primary jurisdiction doctrine. *See Rosillo v. Annie's Homegrown Inc.*, No. 17-CV-02474-JSW, 2017 WL 5256345, at *4 (N.D. Cal. Oct. 17, 2017) (concluding a stay was warranted to pursuant to the primary jurisdiction doctrine based on evidence that it was likely that the FDA would address the use of "natural" on food labels).

Accordingly, the Court should stay or dismiss Plaintiff's unlawful claim until the FDA responds to the CSPI Letter.

### d. **Plaintiff's residual claims are preempted.**

Because "Sorta Sweet" is not—and could not plausibly be alleged to be—an implied "Low Sugar" claim, none of the FDA regulations cited by Plaintiff precludes describing a beverage's taste as "Sorta Sweet." For instance, 21 C.F.R. § 101.60 provides that "[a] claim about the . . . sugar content of a food may only be made on the label . . . if [t]he claim uses one of the terms defined in this section . . ." *See* 21 C.F.R. § 101.60(a). Section 101.60(c), in turn, lists various kinds of "sugar" claims that can made under specific circumstances, including "absolute" sugar claims ("sugar free," "no sugar"), and "relative" sugar claims ("reduced sugar," "less sugar," "lower sugar"). Nor is the word "sorta" a "relative" term that is specifically regulated by the FDA and understood by consumers to have a specific meaning, in the same way as terms such as "light" or "reduced." *See Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1087 (N.D. Cal. 2017) (dismissing claims where the challenged terms were not governed by FDA regulations, but were "more akin to 'sales patter' on which a reasonable consumer would not rely"). Thus, the "Sorta Sweet" labeling does not violate 21 C.F.R. § 101.60 as a matter of law.

And Plaintiff's pleading of the regulations actually pleads herself out of court on preemption grounds. Plaintiff alleges that the FDA *does* regulate sugar claims on labels and precludes the use of sugar content claims unless certain requirements are met. *See, e.g.,* FAC ¶¶ 33–37, 42. Plaintiff alleges that "[b]ecause 'low sugar' claims have never been authorized, they are prohibited." *Id.* ¶ 42. But as explained above, "Sorta Sweet" is not a "low sugar" claim. By alleging here that the CLRA and FAL preclude the use of "Sorta Sweet" because it means "low

foods-labeled-low-sugar-misleading-consumers.html.

sugar," Plaintiff is using California law to impose obligations "not identical to" federal law, which is expressly preempted by the federal Food, Drug and Cosmetics Act. *See* 21 U.S.C. § 343-1(a)(5); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010) (the FDCA's express preemption provision "reaches beyond positive enactments like statutes and regulations, to embrace common-law duties and judge-made rules"); *Dvora v. Gen. Mills, Inc.*, No. 11-CV-1074, 2011 WL 1897349, at *6 (C.D. Cal. May 16, 2011) (holding claims are preempted where "it is impossible to see how Plaintiff's lawsuit does not seek to impose limitations on Defendant's manner of packaging its products that are different from what federal regulations currently require/permit"). Plaintiff, by her own pleading, concedes that her FAC must be dismissed.

## B.   Plaintiff does not plausibly allege facts sufficient to show that a substantial portion of reasonable consumers have been deceived by "Sorta Sweet."

Plaintiff alternatively claims that "Sorta Sweet" is deceptive and misleading, causing consumers to think the product is "low in sugar," and thus providing an alternative ground for her UCL "unlawful" claim (FAC ¶¶ 83–104) as well as providing the sole basis for each of her Second, Third, and Fourth claims.

Claims that a label is misleading or deceptive are governed by the "reasonable consumer" test. *Becerra*, 945 F.3d at 1228–29. Under this standard, Plaintiff must "show that members of the public are likely to be deceived." *Id.* (citation omitted). This requires more than a mere possibility that the phrase "Sorta Sweet" "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Rather, the reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* Plaintiff has the burden of pleading *facts*—not conclusions—that a substantial portion of consumers, acting reasonably, could be misled by "Sorta Sweet." And Plaintiff's pleading burden is heightened; she must meet the Rule 9(b) standard.

Here, it is obvious that Plaintiff fails to meet her burden for two reasons. *First*, her allegations of deception are inadequately conclusory. *Second*, Plaintiff could not plausibly allege deception, given the plain meaning of the phrase "Sorta Sweet," the entire context of the label, and

the StraightUp Tea product line.

### 1.    Plaintiff's conclusory allegations of deception are inadequate.

Plaintiff's allegation of consumer deception are inadequate.  In only a few places in the FAC does Plaintiff allege *anything* about how consumers would perceive the phrase "Sorta Sweet"—and all are boilerplate, conclusory allegations.  *See* FAC ¶ 30 ("The representation as 'Sorta Sweet' is understood by consumers to indicate the Product is 'low sugar' and contains less sugar than it does."); *id*. ¶ 32 ("The representation as 'Sorta Sweet" is understood by consumers to indicate the Products are low in sugar and lower in sugar than it is.").  These are conclusions, not alleged facts that support the conclusion.

Hoping to fill the gap, the FAC is replete with "make weight" paragraphs copied-and-pasted from her counsel's other lawsuits, generally discussing potential health effects of excessive added sugar consumption (FAC ¶¶ 19–20), general consumer confusion about labels (*id*. ¶¶ 26–29, 30–31), and descriptions of inapplicable FDA regulations (*id*. ¶¶ 33–37).  Even as to the most potentially relevant portion of the FAC—paragraphs 44 through 56—wherein Plaintiff attempts, primarily through the CSPI letter, to redefine "Sorta Sweet" to mean low in sugar and then "estimates" some standard for what could be considered "low" in sugar, there is *absolutely* no factual allegation that any consumer—much less a substantial portion of consumers acting reasonably—has ever done the same.

Plaintiff further cites two news articles containing the authors' interpretation of "surveys," one of which merely indicated that consumers are interested in reducing their sugar intake, FAC ¶ 26, n.10, while the other suggested in a headline that some consumers "are at a loss" as to how to reduce their sugar intake, *id*. ¶ 27, n.11.  That latter article, in turn, stated that consumers are more likely to "regularly check sugar in foods typically considered sweet, such as cake, but are less likely to do so for dressings, sauces, and condiments."[8]  If anything, this article *undercuts* Plaintiff's allegations, because consumers would be *more* likely to check the Nutrition Facts panel

---

[8]  Elizabeth Crawford, "Consumers seek 'low sugar' claims, but remain confused & distrustful of nutrition labeling," November 23, 2016, available at: https://www.foodnavigator-usa.com/Article/2016/11/23/Consumer-s-seek-low-sugar-claims-but-distrust-labeling.

to determine the sugar content on "Sorta Sweet" tea *because* the label has the word "sweet" on it. Plaintiff also cites a study (FAC ¶¶ 28–29, n.12) regarding low-fat, low-calorie, low-sugar, and low-sodium claims, which confirmed that "compared to purchases with no claim, purchases with any low-content claim had lower mean energy, total sugar, total fat, and sodium densities."[9]  This too, confirms that products that are properly labeled with "relative" claims under the FDA regulations do in fact contain less calories, sugar, fat, and sodium.  In short, none of these articles or studies do anything to support Plaintiff's claims; in fact, they undermine them.

Indeed, Plaintiff herself does not even allege that she was misled by the phrase "Sorta Sweet."  FAC ¶¶ 12, 59–60.  The FAC elides this allegation—Plaintiff alleges she read and relied on "Sorta Sweet" and she alleges that she thought the beverage was low in sugar.  But she never alleges that it was the "Sorta Sweet" language that *caused* her to think (unreasonably) that the beverage was low in sugar.

In short, Plaintiff's pleading falls far short of the requirement of Rules 8 and 9(b) to plead plausible facts, with specificity, regarding the deception of a significant portion of reasonable consumers.

### 2.   Plaintiff could not plausibly allege reasonable consumer deception.

Plaintiff's failure to adequately plead deception is no accident—it is because she cannot do so.  And she cannot do so for at least the following three reasons.

### a.   "Sorta Sweet" does not mean "low in sugar".

Defendant has already explained why the plain meaning of "Sorta Sweet" does not mean "low in sugar."  *See supra* at 8–10.  Courts have dismissed deception claims "where, as here, deception can be found only through ignoring the plain meaning of the words" on the label.  *Handy v. LogMeIn, Inc.*, No. 1:14-CV-01355 - JLT, 2015 WL 4508669, at *8 (E.D. Cal. July 24, 2015).  And a complaint that "is based on a strained and artificial interpretation of the phrase ['Sorta Sweet'] that no reasonable consumer would adopt" must be dismissed.  *See Manuel v. Pepsi-Cola*

---

[9]    Lindsey Smith Taillie, et al., "No fat, no sugar, no salt … no problem? Prevalence of "low-content" nutrient claims and their associations with the nutritional profile of food and beverage purchases in the United States," J. Acad. Nutr. Diet, Sept. 2017; 117(9), available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5573644/.

*Co.*, No. 17 CIV. 7955 (PAE), 2018 WL 2269247, at \*7 (S.D.N.Y. May 17, 2018), *aff'd*, 763 F. App'x 108 (2d Cir. 2019).   Interpreting "Sorta Sweet" as "Low in Sugar" is just such an implausible—and impermissible—interpretation.

### b.   The context surrounding "Sorta Sweet" precludes the alleged consumer deception.

Courts have repeatedly confirmed that when determining whether a reasonable consumer would be misled by a particular label, "context is crucial." *Geffner*, 928 F.3d at 200 (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)).   "The question is how a reasonable consumer would interpret the phrase … in the context of the specific commercial interaction that Plaintiff has challenged." *Delman v. J. Crew Grp., Inc.*, No. CV 16-9219-MWF (ASX), 2017 WL 3048657, at \*7 (C.D. Cal. May 15, 2017).   Here, the relevant context includes the entirety of the "Sorta Sweet" label, and its comparator products in the Straight Up Tea product line.

### (1)   The entire label precludes plausible allegations of deception.

Courts have held that the relevant "context" includes "the entire label," including all information on the product's packaging. *Gasser v. Kiss My Face, LLC*, No. 17-CV-01675-JSC, 2018 WL 4847071, at \*5 (N.D. Cal. Apr. 4, 2018); *see also Silva v. Unique Beverage Co., LLC*, No. 3:17-CV-00391-HZ, 2017 WL 4896097, at \*3 (D. Or. Oct. 30, 2017) ("[I]t is appropriate to consider the entirety of a label in ascertaining whether a reasonable consumer would find a product deceptive or misleading.").   "[T]he reasonable consumer takes some time to digest the information offered within the various sections of the product's label, including the nutrition facts, ingredients list, serving size, and can size." *Beckman v. Arizona Canning Co., LLC*, No. 316CV02792JAHBLM, 2019 WL 4277393, at \*8 (S.D. Cal. Sept. 9, 2019).   Reasonable consumers know they can consult "the familiar and ubiquitous Nutrition Facts Panel found on most food packages," to determine the product's sugar and caloric content. *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014).   "District courts also recognize that where the actual ingredients are disclosed, a plaintiff may not ignore the ingredient list." *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 20 (N.D. Cal. 2020); *see also Beckman*, 2019 WL

4277393, at *8 ("Consumers often review the ingredients [list] for health reasons," such as to avoid unhealthy additives.).

Courts have repeatedly dismissed claims that were based on ignoring the "ubiquitous" Nutrition Facts panel that provides an accurate statement of the product's sugar content.  For example, in *Clark v. Perfect Bar, LLC*, the court determined that no reasonable consumer could be deceived concerning the product's sugar content when the label plainly disclosed the amount of sugar in the product.  No. C 18-06006 WHA, 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018), *aff'd*, 816 F. App'x 141 (9th Cir. 2020).  The court rejected the claim that added sugar rendered the bars "unhealthy" or "less healthy from what [plaintiff] otherwise had believed," holding that such a theory was "untenable":

> The actual ingredients were fully disclosed. Reasonable purchasers could decide for themselves how healthy or not the sugar content would be. No consumer, on notice of the actual ingredients described on the packing including honey and sugar, could reasonably overestimate the health benefits of the bar merely because the packaging elsewhere refers to it as a health bar … The honey/sugar content was properly disclosed — that is the end of it — period.

*Id.*

Similarly, the court in *Truxel v. General Mills Sales, Inc.* reached a similar conclusion where the challenged product labels provided truthful and required facts about breakfast cereals and snacks with high sugar content.  No. C 16-04957 JSW, 2019 WL 3940956, at *1, 4 (N.D. Cal. Aug. 13, 2019).  Relying on *Ebner*, the court stated that *Williams* "did not hold that litigants may ignore the information on a product's label."  *Id.* at *4.  The court found that the plaintiffs could not state a claim where "the actual ingredients were fully disclosed and it was up to the [p]laintiffs, as reasonable consumers, to come to their own conclusions about whether or not the sugar content was healthy for them."  *Id.*

Additionally, in *Silver v. BA Sports Nutrition, LLC*, the court rejected the theory that the phrase "'Superior Hydration' implies that BodyArmor is beneficial to one's health and 'overall well-being,' but that because of high sugar content, BodyArmor is not in fact beneficial to one's health and overall well-being."  No. 20-CV-00633-SI, 2020 WL 2992873, at *8 (N.D. Cal. June

4, 2020) (citations omitted).  The court concluded that "a reasonable consumer would not be deceived about the nature of sports drink they were buying":

> The Court finds that this claim is implausible because it requires unsupported inferences – that "Superior Hydration" conveys something more generally about overall healthiness and positive impact on one's well-being – and ***it requires that a reasonable consumer ignore the prominently displayed Nutrition Facts disclosing the total amount of sugar, as well as the ingredient list stating that "pure cane sugar" is the second ingredient***. A reasonable consumer purchasing a sports drink … would not be misled into thinking that simply because the label states that it provides "Superior Hydration" and contains vitamins and electrolytes, that this necessarily means anything about the overall health benefits of the product ***given the disclosure of the sugar content***.

*Id.* (emphasis added).

Finally, in *Brown v. Danone N. Am., LLC*, the plaintiff alleged that she read product labels which represented that the milk was "Organic," but that she did not know that the milk contained DHA, which "made it not organic."  No. 17-CV-07325-JST, 2018 WL 2021340, at *6 (N.D. Cal. May 1, 2018).  The court concluded that plaintiff "cannot plead reliance or economic injury" given that "the label prominently disclosed the presence of DHA," and plaintiff therefore "*did* know all the relevant facts."  *Id.*  The court reasoned that plaintiff's "circular reasoning does not save [her] claim."  *Id.*

Here, there is no dispute that the "Sorta Sweet" label accurately discloses the product's sugar content.  The Nutrition Facts panel explains that the tea contains 21 grams of sugar and 90 calories.  *See* Willmon Decl. ¶ 4, Ex. A.  And the Ingredients List identifies "sugar" as the second ingredient, following "filtered water."  *Id*.  Just like in the cases discussed above, no reasonable consumer could be deceived by the phrase "Sorta Sweet" given those prominent and required disclosures.  Courts must dismiss claims that are based on "ignor[ing] the prominently displayed Nutrition Facts disclosing the total amount of sugar, as well as the ingredient list stating that '[] sugar' is the second ingredient."  *BA Sports Nutrition*, 2020 WL 2992873, at *8 (citations omitted).

### (2)   The complete Straight Up tea product line precludes plausible allegations of deception.

Evaluating the relevant context of the challenged phrase also requires consideration of, at the very least, alterative products from the same beverage brand.  *See Becerra*, 945 F.3d at 1229

1    (holding that "[i]n context, the use of 'diet' in a soft drink's brand name is understood as a relative

2    claim about the calorie content of that soft drink compared to the same brand's 'regular' (full-

3    caloric) option"); *Geffner*, 928 F.3d at 200–01 (concluding that "when applied to soft drinks, the

4    label 'diet' carries a primarily relative (rather than absolute) meaning" and "connotes simply that

5    the 'diet' version of the drink is *lower* in calories than the 'non-diet' version of the drink")

6    (emphasis in original); *Becerra v. Coca-Cola Co.*, No. C 17-05916 WHA, 2018 WL 1070823, at

7    *3 (N.D. Cal. Feb. 27, 2018), *appeal dismissed*, 789 F. App'x 25 (9th Cir. 2019) (discussing the

8    context of Diet Coca-Cola purchases and stating that "[i]n supermarkets, Diet Coke is displayed

9    next to regular soft drinks and is not sold in the health-food section").

10       At least one district court has relied on the Ninth Circuit's ruling in *Becerra v. Dr

11   Pepper/Seven Up, Inc.*, to dismiss similar claims, explaining that decision "is helpful in

12   interpreting cases where a modifying adjective is at the heart of the purported deception."

13   *Cheslow*, 445 F. Supp. 3d at 16–17.  In *Cheslow*, the challenged phrase was "white chips," and the

14   court applied *Becerra* to conclude that "the adjective 'white' in 'White Chips' … defines the color

15   of the food," but not "the food itself" or "the quality of the product."  *Id.*

16       Here, the phrase "Sorta Sweet" must be considered in light of its two Straight Up Tea™

17   counterparts: "Unsweetened" and "Sweet" tea.  Just as in the diet soft drink cases cited above,

18   "Sorta Sweet" is a description of the product's taste that must be understood in comparison to the

19   "Unsweetened" and "Sweet" varieties.  "Sorta Sweet" has a taste profile that is on the sweetness

20   spectrum between "Unsweetened" tea at the one end, and "Sweet" tea at the other end.  And just

21   as in *Cheslow*, "Sorta Sweet" refers to "the [taste] of the [beverage]," but not its sugar content or

22   overall healthfulness.  445 F. Supp. 3d at 17.  But if one were to accept that "sweet" could refer to

23   sugar, then "Sorta Sweet," with its 21 grams of sugar, is accurately labeled when placed in

24   comparison to its "Unsweetened" and "Sweet" counterparts, which have 0 grams and 45 grams of

25   sugar, respectively.  The Ninth Circuit's controlling decision in *Becerra* wholly forecloses

26   Plaintiff's FAC.

27                                      *      *      *

28       "[W]here a court can conclude as a matter of law that members of the public are not likely

---

to be deceived by the product packaging, dismissal is appropriate." *Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010).  This is the case here.

            **c.**      **<u>At most, "Sorta Sweet" is non-actionable puffery upon which no reasonable consumer relies.</u>**

        Beyond pleading an implausible meaning of the phrase "Sorta Sweet," Plaintiff's FAC fails because "Sorta Sweet" is not an objective statement that can be proven true or false.  The phrase is non-actionable puffery, which defeats any reasonable consumer reliance upon the phrase.

        Statements "that amount to 'mere puffery' are not actionable because no reasonable consumer relies on puffery."  *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 964–65 (N.D. Cal. 2017); *see also Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005) ("Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable.").  The Court may determine as a matter of law whether a statement is puffery.  *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 245 (9th Cir. 1990).

        "[T]o be actionable … a statement must make a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact."  *Vitt v. Apple Computer, Inc.*, 469 Fed. Appx. 605, 607 (9th Cir. 2012) (affirming finding that terms used to describe the product such as "high value" and "high performance" were "generalized, non-actionable puffery because they are 'inherently vague and generalized terms' and 'not factual representations that a given standard has been met'") (internal quotation marks omitted).

        Here, "Sorta Sweet" constitutes puffery because it is an "inherently vague and generalized" description of the tea's taste.  *Id.*  There is no objective standard by which Plaintiff can prove whether "Sorta Sweet" tea is, or is not, "Sorta Sweet," given that there is no objective meaning to "sorta" and consumers perceptions of sweetness is inherently variable.

        For these reasons, numerous courts have found that similar statements regarding a product's taste or sweetness constitute puffery and thus must be dismissed.  *See, e.g., Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1316–17 (E.D. Cal. 2014) (dismissing complaint and holding that the phrases "just a tad sweet" and "a kiss of honey" on the Honest Teas were "non-

specific terms that lack any clear, objective indication of their levels."); *Hadley*, 273 F. Supp. 3d at 1086 (holding that the statements "just the right amount of sweetness" and "touch of sweetness" were non-actionable puffery); *Krommenhock v. Post Foods, LLC*, No. 16-CV-04958-WHO, 2018 WL 1335867, at *11 (N.D. Cal. Mar. 15, 2018) (determining that a "touch of honey" was puffery).

In the face of this uniform caselaw which, if followed by this Court would be fatal to Plaintiff's claims, Plaintiff attempts to create an "objective" standard from whole cloth.  Assuming the Court adopts her (implausible and wholly unsupported) definition of "sorta" to mean "low," Plaintiff attempts to hypothesize what amount of sugar would meet a definition of "low," based on an analogy to other FDA regulations.  But this effort is doomed.  Primarily because the FDA regulations simply don't apply to the "Sorta Sweet" claim and also because the supposed amounts are merely estimated.  FAC ¶¶ 49–55.  That Plaintiff must "estimate" (*id*. ¶ 51) what amount of sugar constitute "low" by analogy to what is a low amount of unrelated nutrients confirms that there is, in fact, no objective standard against which "Sorta Sweet" can measured.  Indeed, the use of a colloquial term—"sorta"—emphasizes the subjective, informal, non-actionable nature of the phrase "Sorta Sweet."  *See* House Decl. ¶ 14, Ex. H ("sort of" is an informal term "used to convey inexactness or vagueness").

"Sorta Sweet" is puffery.  Plaintiff's deception claims should be dismissed.

### C.     <u>Plaintiff's Complaint, even if not fully dismissed, is still subject to partial dismissal.</u>

As explained below, even if the Court declines to discuss the entire Complaint, Plaintiff's request for injunctive relief and her CLRA claim should be dismissed.

#### 1.     <u>Plaintiff lacks standing to pursue injunctive relief because she cannot be deceived again by the label.</u>

Plaintiff's request for injunctive relief should be dismissed because she lacks standing to pursue this remedy.  Standing is "an essential and unchanging part of the case-or-controversy requirement" of Article III of the U.S. Constitution. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Plaintiff bears the burden of establishing the three necessary elements of standing: injury-in-fact, causation, and redressability.  *Id.*  For injunctive relief, which is a prospective remedy, the threat of injury must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth*

1  *Island Inst.*, 555 U.S. 488, 493 (2009).  The "threatened injury must be *certainly impending* to

2  constitute injury in fact" and "allegations of *possible* future injury are not sufficient."  *Clapper v.*

3  *Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and alteration omitted).

4          The Ninth Circuit clarified the standard for Article III standing in false labeling cases in

5  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  The Ninth Circuit held that

6  "a previously deceived consumer may have standing to seek an injunction against false advertising

7  or labeling, even though the consumer now knows or suspects that the advertising was false at the

8  time of the original purchase" provided that "the consumer may suffer an 'actual and imminent,

9  not conjectural or hypothetical' threat of future harm."  *Id.* at 969.  In that case, if the plaintiff

10  encountered the product at issue (so-called "flushable" wipes) at a store again in the future, the

11  Ninth Circuit reasoned, she would have no way of knowing whether the representation "flushable"

12  was true without first purchasing the product, taking them home, and testing them for herself.  *Id.*

13  at 971–72.

14          Following *Davidson*, federal courts have regularly dismissed claims for injunctive relief

15  when the plaintiff's theory of deception can be dispelled by simply consulting the Ingredients List

16  or Nutrition Facts.  *See, e.g., Joslin v. Clif Bar & Co.*, No. 4:18-CV-04941, 2019 WL 5690632, at

17  *4 (N.D. Cal. Aug. 26, 2019) (distinguishing from *Davidson* because "[p]laintiffs do not need to

18  purchase the [p]roducts again in order to know whether the Products contain real white chocolate"

19  and instead "need only inspect the ingredient list to discover that the Products do not contain white

20  chocolate"); *see also Prescott v. Nestle USA, Inc.,* No. 19-CV-07471-BLF, 2020 WL 3035798, at

21  *1, 6 (N.D. Cal. June 4, 2020) (concluding that "[n]ow that [p]laintiffs know the [p]roduct does

22  not contain [a certain ingredient], it is difficult to see how [p]laintiffs could be misled into

23  purchasing it in the future.").

24          The Complaint alleges that Plaintiff "would purchase the Products again in the future if the

25  Products were remedied to reflect Defendant's labeling and marketing claims for them."  FAC

26  ¶ 14.  This allegation is nonsensical, even assuming that she meant to refer to "*Plaintiff's* labeling

27  and marketing claims."  The FAC does not identify how Plaintiff believes the label should be

28  remedied to refer to the sweetness of the beverage, in relation to "Unsweetened" and "Sweet" tea,

1   in a way that is not misleading.  Such a nonsensical, cut-and-paste boilerplate allegation does not

2   meet the *Twombly* and *Davidson* standard to plausibly allege that (i) Plaintiff truly desires to

3   purchase the same tea, with the same sugar content, but with a phrase other than "Sorta Sweet" on

4   the label again the future, and (ii) without injunctive relief, Plaintiff will be unable to reasonably

5   rely on the truth of the label in the future.  As in the cases cited above, Plaintiff can always consult

6   the Ingredients List and Nutrition Facts panel to accurately determine the amount of sugar in the

7   tea, and thus cannot claim any confusion or deception from the label in the future.

8          Notably, the FAC alleges that Plaintiff "would not have purchased the Products had she

9   understood that the Products were truly high in sugar," FAC ¶ 13, which is a judicial admission

10  that she actually wants to purchase a *different* product with *less* sugar in the future.  But "the Court

11  lacks authority to compel [Snapple] to make any particular product by way of an injunction."

12  *Prescott*, 2020 WL 3035798, at *6.  And Straight Up Tea *already* offers an "Unsweetened" variety,

13  which has zero sugar—which Plaintiff inexplicably chose not to purchase.

14         Additionally, her injunction claim fails for lack of redressability.  Plaintiff cannot plausibly

15  allege what injunctive relief could be ordered by the Court.  As noted above, "Sorta Sweet" tea

16  sits between the options of Straight Up "Unsweetened" and Straight Up "Sweet."  It is unclear how

17  a tea with a taste profile that is somewhere between "Unsweetened" and "Sweetened" could

18  accurately (at least in Plaintiff's view) describe its level of sweetness, given that she would

19  apparently challenge any phrase suggesting that the beverage is slightly, but not completely, sweet.

20         In short, Plaintiff lacks standing to pursue injunctive relief.

21         **2.      Plaintiff's CLRA claim must be dismissed because she failed to file an
                      affidavit of proper venue under Cal. Civ. Code § 1780(d).**

22          California Civil Code Section 1780(d) requires that, at the time the complaint is filed, the

23  plaintiff file "an affidavit stating facts showing that the action has been commenced in a county

24  described in this section as a proper place for the trial of the action."  Cal. Civ. Code §1780(d).

25  When a plaintiff fails to file the required affidavit, "the court *shall*, upon its own motion or upon

26  motion of any party, dismiss the action without prejudice."  *Id*. (emphasis added).

27

28

1        Judges in this district have followed the law and dismissed CLRA claims when the plaintiff

2  failed to comply with this mandatory requirement.  *See In re Apple & AT&T iPad Unlimited Data*

3  *Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (dismissing "the CLRA claims … as to

4  all plaintiffs because they did not file the required affidavits"); *see also Hamm v. Mercedes-Benz*

5  *USA, LLC*, No. 16-cv-03370-EJD, 2017 WL 4168573, at \*3 (N.D. Cal. Sept. 20, 2017) (dismissing

6  the CLRA claim "because [plaintiff] did not file the required affidavit").

7        Here, Plaintiff failed to file the required affidavit of proper venue.  Defendant pointed this

8  out in the meet-and-confer preceding the filing of the FAC.  *See* House Decl. ¶ 5, Ex. A, at 6.

9  Plaintiff did not correct the error.  As a result, her CLRA claim is procedurally deficient and must

10  be dismissed.  And because Plaintiff did not bother to correct the error when it was pointed out,

11  leave to amend should not be given.

12      **D.**    **Leave to amend should be denied.**

13        The Court should grant Defendant's motion to dismiss without leave to amend.  Leave to

14  amend should not be granted if amending the complaint would be futile.  *Steckman v. Hart Brewing*

15  *Inc.,* 143 F.3d 1293, 1297 (9th Cir. 1998).  Thus, a court "may deny a plaintiff leave to amend if

16  it determines that allegation of other facts consistent with the challenged pleading could not

17  possibly cure the deficiency...."  *Telesaurus VPC, LLC v. Power,* 623 F.3d 998, 1003 (9th Cir.

18  2010) (citations and internal quotation marks omitted).

19        As demonstrated above, the Complaint relies on an unsound legal premise—that the words

20  "Sorta Sweet" on the label of this bottled tea are an implied "low in sugar" claim and are

21  misleading.  That is wrong and, as explained above, there are no additional facts that Plaintiff could

22  allege that would enable her to plausibly allege these claims.  And Defendant's counsel voluntarily

23  explained this, extensively and in writing, to Plaintiff.  Defendant's counsel consented to Plaintiff

24  filing an amended complaint to address—as best she could—Defendant's points.  She had weeks

25  to consider those points and to craft an amended complaint that addressed them.  The FAC

26  represents her best attempt to state plausible claims.  And it would certainly not be in the interests

27  of justice under Federal Rule of Civil Procedure 15 to put Defendant to the cost and to require the

28  expenditure of even more scare judicial resources, simply to permit Plaintiff to add allegations that

1  she choose to exclude when she filed the FAC.  The Court should dismiss the FAC without leave

2  to amend.  *See, e.g.*, *Low v. LinkedIn Corp.,* 900 F. Supp. 2d 1010, 1033 (N.D. Cal. 2012); *Alvarez*

3  *v. Chevron Corp.,* 656 F.3d 925, 935 (9th Cir. 2011).

4  **V.   <u>CONCLUSION</u>**

5       For the foregoing reasons, Defendant's Motion to Dismiss the FAC should be granted

6  without leave to amend.

7

8   Dated: January 14, 2021                    Respectfully submitted,

9                                       By:   */s/ Jonathan Patchen*
                                            BAKER BOTTS L.L.P.
10                                           Jonathan Patchen (Cal. Bar No. 237346)
                                            jonathan.patchen@bakerbotts.com
11                                           Ariel D. House (Cal. Bar No. 280477)
                                            ariel.house@bakerbotts.com
12                                           101 California Street, Suite 3600
                                            San Francisco, California 94111
13                                           Telephone: (415) 291-6200
                                            Facsimile: (415) 291-6300
14
                                            Natalie K. Sanders (Cal. Bar No. 329916)
15                                           natalie.sanders@bakerbotts.com
                                            1001 Page Mill Road, Bldg. One, Suite 200
16                                           Palo Alto, CA  94304
                                            Telephone: (650) 739-7500
17                                           Facsimile: (650) 739-7699

18                                           Attorneys for Defendant
                                            SNAPPLE BEVERAGE CORPORATION
19

20

21

22

23

24

25

26

27

28